Melito et al. v. Experian Marketing and Bose, or Bows, probably. Mr. Feder? Thank you, Your Honor. May it please the Court, Mayor Feder for Experian. The premise for Article III standing in this case in both the district court opinion and in plaintiff's brief is that Congress has elevated the receipt of these texts to the status of automatic Article III injury even without any allegation of harm, as of course there's no allegation of any harm in this complaint. The theory is that the texts automatically rise to the level of Article III injury. Why do you say that Congress elevated this to an Article III injury? Suppose a plaintiff sued, let's say they have a diversity jurisdiction, and they sue saying there's a state law cause of action that nobody's ever heard of before for invasion of privacy when such an unsolicited phone call is made. I can see how a court might say, no such thing, there's never been any such cause of action dismissed under Rule 12b-6. Why doesn't that person have a perfectly ordinary Article III standing? Many people, I assume, would feel that their privacy was invaded and that that's an injury. It may or may not be a legally cognizable injury. Well, certainly, Your Honor. Would there be standing in that case? Are you saying that person— I think it would depend on things like whether that person actually noticed the text and was annoyed by it. How would they be suing if they hadn't noticed the text? Right. So, that person—well, there are a lot of ways that that can happen. There are lawyers who— It's a class action. There's a lawyer who called him up and said, unsolicited, I'm making an annoying invasion of privacy call to tell you that your privacy has been invaded by somebody. The person then says, oh yeah, I was offended. I don't know how people— I just don't get what you're saying, frankly, as a matter of standing. Why did Congress enact this statute? Because people called them up. Their constituents said, we're getting these annoying phone calls. Oh, but there's a huge difference, and without having to reach the issue of phone calls as opposed to text. There is a massive difference between people being—I mean, look at, for instance, what the plaintiffs quote on page 4 of their brief, the statement from the sponsor, Senator Hollings, about what was upsetting about the phone calls that they're regulating, that it interrupts dinner, it wakes people up in the morning, it drags sick people out of bed. All of these things, you want to rip the phone out of the wall? None of that has anything to do with text. Have they actually looked at their texts? Well, some people do and some people don't. There's no record here, of course, because this was all decided on the theory. Most of the people I see walking around on the street are doing nothing but texting each other. Yeah. I mean, I just don't understand. What is the human reality here? You're saying they should have said, I got these texts and it offended me. And the absence of that kind of allegation is what you say means there's no standing? Or even, I actually noticed it, it came to my attention, Your Honor. I mean, as long as— If somebody is suing and says, I got slapped in the face and I allege this is a battery under state law, does not allege any physical injury from the slap, the person has to say, but I noticed it and my dignity was offended? That's why it's a cause of action for batteries, because when somebody gets slapped in the face, we understand that normal people's dignity is offended by that. But Your Honor, this is the difference between whether a tree fell in the forest or a tree fell on my car. Because there have got to be millions of people, many of them perhaps older than the people we see walking around with texts, who don't use text functioning, may not get text notices, may not notice them. We don't know any of that here, because we have this notion just that the mere sending of a text that we have no idea if someone ever noticed is a violation for all these absent class members. That might be a very good argument as to why, as a substantive matter, a text is different than a phone call, which is the issue on the merits that your co-defendant, third-party plaintiff decided to compromise rather than litigate. You're free to litigate it, aren't you? I think we're free to litigate it. To whatever extent. You're not in the case anymore as against the plaintiffs, is that right? Because that was dismissed? Correct. So should the litigation continue, either in this case or in a freestanding separate case between you and American Eagle, you would be free to raise the argument that as a 12b1 matter, they may have sold out on this and settled the case, but there actually was no claim. Well, that there was no claim? No claim. No 12b6. Sure. But our argument here is not that there was no claim. It's that if you have something that has, you know, where you have a class of millions of people, some of whom may have been injured by it and some of whom may not, and where you have the idea that, I mean, both the district court and plaintiffs have felt compelled to rely on the idea that Congress elevated this that may or may not have been a problem. Looking at it across the board, sure, maybe Congress could say, yeah, anyone who receives this we're going to assume is injured, but yeah.  I mean, I'm having difficulty, and I think this is where Judge Lynch was headed with the last question, in what way are you harmed by the fact that American Eagle is no longer carrying that cause? You can disclaim liability to American Eagle by making 12b1, 12b6, or any other relevant argument. I mean, I guess I would say that, you know, first of all, aside from there being some sort of fuzziness in what happens with that kind of follow-on litigation, here it's an article three question that the court has to decide for this case. It's a practical matter. I can't intervene to make that claim. Why can you? You have every right at this point to proceed as against American Eagle, but just because the court may, in your view, have gotten the 12b1 premise wrong, you're not disabled from making exactly that argument now. Certainly I would like to think that we're not disabled from it. On the other hand, in advising a client, whether I am, you know, they can be rock solid sure that there is no way that they're going to be affected by the determination here, I think that it is possible in, because again, this is not all that well spelled out a path for litigating this kind of issue that necessarily is presented in the main case to then try to really relitigate that in the other case. So and. Well, but Mr. Feder, I thought your answer was going to be, it doesn't matter to us, does it? If you have no standing, as it were, you know, when you live by the sword, you die by the sword, I suppose, with respect to standing. But if you have no standing to raise this issue, we still have to decide it, because now we know about it. We have to assure ourselves our own jurisdiction. So you are effectively here as amicus curiae, if you don't have otherwise have standing. Certainly. I'm sorry. I thought that was assumed. But yes, that certainly is, is true. Right. Sending me away doesn't send the issue. Right. That's right. And if we sent you, if you were still pressing the other issues that you raised in objecting to the settlement, there would be, it would, it would matter whether you had standing to do this or not. But I take it you are not arguing Article 3 standing. And Article 3 standing is something we have to decide. So if you're right, we should just thank you very much for calling it to our attention. No, no, thank you will be no thank you. But, but whether you have standing to raise that standing issue is of no moment to our need to decide the issue. Certainly I think that's true. So if I say I've been giving you a hard time, it's because on the substance of that issue, it's because it does matter and we do have to decide it and we may decide it for you or against you, but we have to decide it. And I just think it really is important to be clear on the idea that unless you're going to assume that everybody, you know, millions of people who've received text messages that may or may not have ever noticed them, they may not pop up on their phone, however it's set up, unless you're going to assume that they're all injured, then the standing here has decided across the board that this is an injury and Congress never decided anything like that. Does the standing issue given the class settlement require that each member of the class individually have had the exposure to the text message that you contend is enough to get over article three standing or for the purposes of settlement approval, is it enough that there be some? I don't think it is, but this is an issue that I think is controversial. Yeah. You don't think what is. Yeah. Fair point, Your Honor. Let me try to be clear. And maybe I can rephrase it affirmatively, you know, I think that it is not a completely settled issue, but one that for instance, Chief Justice Roberts wrote about in an opinion joined by a couple of others a couple of years ago as to whether there's got to be article three standing for each person receiving relief in a federal court case. So I do think . . . we certainly think he's right about that, so I do think that you can't approve a class settlement that is going to be . . . and enter a judgment that's going to be paying out money to people who don't have standing. So wait, would that . . . what does that go to then? Do we . . . no one's objected to the certification of the class. You haven't raised that argument. Yeah, I don't think we can raise it. But isn't that what the issue would be, that is to say, there would be one issue at the very outset, right, which would be that individual issues predominate because everyone would have to say, I actually saw the text in order to collect for whatever the merits of that are. And issue number two would be, if that's considered as a pretty simple matter to resolve, that would just go to who can actually collect on the settlement. Yeah, the . . . that is . . . I mean, you are raising what is definitely a relevant issue, but I'd say is that, having dealt with this in other contexts, that whole issue of where the class member standing figures in is a mess, but . . . At this point . . . no, no, not just the name plaintiffs, because at this point where we're dealing with the . . . we're not at class certification. At the class certification stage, there is certainly a decent argument, maybe a correct one that there's no Article III problem with certifying a class that may contain . . . although there is Second Circuit language in one case saying you can, in what I think it's the Denny case perhaps, but that is . . . that aside, maybe that's true, maybe it's not. Here we're talking about approving a settlement to . . . that's going to involve paying people whether or not they have standing. So . . . Right, but that's still not the issue you're raising. What you're raising, I thought, was the issue that nobody has shown that he or she has standing. So we don't . . . we aren't really . . . You're erasing both. Excuse me, just . . . can you let me ask the question? We aren't really, I thought, focused on . . . it's an interesting question, the question of whether a class is properly certified. We aren't actually facing a question of who gets to collect at the end of the day against this fund. What you are arguing, I thought, was that none of these individual plaintiffs, the named their own behalf standing because they have not alleged slash at this stage of the proceedings actually presented evidence that they suffered the injury because they have not put in an affidavit saying I actually noticed the text and felt my dignity was offended by it or my privacy was invaded by it or something like that. So I think we are raising both. I think we are certainly raising as to the named plaintiffs, but I think that we're dealing with appealing a judgment that entitles all of these class members without standing to collect. So it's not just a question of . . . But that can be remedied. If that's not a question of class, the propriety of class certification, that's something that each person shows up saying, I want a chunk of money. Nobody gets a chunk of money yet. Experian has agreed, not Experian, American Eagle has agreed to pay a certain sum of money as a fund that people are then going to claim against. And at that stage, maybe or maybe not, Joe Blow, who got a text, who's a class member under the definition in the district court's order, who has never yet shown up at all, may or may not have to say something about, if you're right about what constitutes standing, about whether he noticed the text and suffered an injury from it. The problem that you've got, I thought, or the Article III standing issue that is presented to us at this stage of the case is whether the named plaintiffs have Article III standing, because if they don't, the district court had no jurisdiction to go anywhere at all. I thought that was the argument, that it doesn't matter whether you have standing to raise it or not. So the . . . yes. And the reason I say both is because I'm not sure that the premise of what you're saying is correct, that it's open to be . . . the way I read what the district court has decided here, this entitles everybody in the class as defined, that there isn't some subsequent challenge. But how on earth does that affect you at all? They're paying . . . American Eagle is paying $14.5 million. I take it they're paying that money even if only three people show up, even if only the named plaintiffs file a claim at the end of the day. They get to divide $14.5 million, don't they? Well . . . They presumably won't, but then these other people show up, but none of that has any impact on you. My first answer to that is what you said earlier, which is viewing me here as amicus curiae, which is that if this order is entitling these people to the money without Article III standing, then that does raise an Article III question. I'm not sure exactly how to unpack what happens from there and how it affects us. I'm not sure standing here today that . . . certainly if there was no Article III standing to enter an order like this entitling . . . What I'm really saying is do I misunderstand that the issue that you have presented in your brief is that the district court lacked Article III standing from the get-go because there was no injury to the people bringing the lawsuit because we can't look at human beings and say they would probably be offended by receiving text like this because they didn't necessarily actually receive the text or they haven't documented that they've received the text. I thought that was the essence of what you briefed for us very helpfully to make us consider whether there is standing. I think that is the essence of it. I'm just saying that I'm not sure that that's the totality of it because I do think . . . You're not. I don't know who else is. Right. Well . . . Your friends on the other side, I take it, have a very different claim about the standing of the named plaintiffs, but if they win, they're coming after your co-defendant for way more. Right. That's what they're saying is this is a crummy settlement because it's not good enough. There should be more money paid because yet more people got yet more damages than the plaintiffs' lawyers managed to recover for them. Yeah. Look, Your Honor, the truth is however you get to whatever the court's answer is in this case, I think that even the analysis is going to be important because of the difficulties that are there in interpreting Spokio and Struble and how they apply . . . I don't think there's much difficulty at all, frankly. I think if these people did get text, which I guess I always sort of assumed that if people say we're suing because we got these texts, that it takes no Congress to tell me that a reasonable person can contend and that hurts me in some way. It's then perhaps for a court to decide that, but I don't think that this is Congress coming around. Your Honor, of course they choose not to even allege that because they're really here because they want to represent a class that may or may not be able to allege that. So they're not alleging that. They're saying it's just the bare statutory violation that automatically does it. They're not here alleging that. Thank you. Thank you, Mr. Fiedler. Thank you. Mr. Isaacson. If you may please the Court, I'm Eric Alan Isaacson for Objector Appellant Karabos. Like to address the Article III issue first, I don't think there's any problem with determining that the complaint pleaded Article III standing sufficiently. It alleged that they received texts, that they came from American Eagle with a source code 324-53, designating American Eagle as the originator, and they didn't consent to those texts. When I filed objections, I filed declarations on behalf of my client, in this case before this Court, Karabos, and her daughter, Brooke Bose. They'd made claims because they both got texts. They both put in declarations saying, we did not consent to the texts. They put in copies of the texts. You know, Brooke Bose put in a declaration with copies of the texts with the same short code showing they came from American Eagle. So she proved what the name plaintiffs merely pleaded, and the answer was she has no claim. They said there's no evidence she received texts from American Eagle without her consent. She is not on the list of 618,301 persons. I thought you were not representing Brooke Bose. I thought you were representing Karabos. And my point is that they never showed that they have Article III standing. They pleaded it. But why would not the remedy be, if you are right about that, that actually you do agree with Mr. Fader? Maybe a 12B1 motion addressed to the complaint would have been ineffective. But a 12B1 motion raised at the class certification stage, or the district court recognizing the issue at the class certification stage, should have said, oh, wait, now it's time for these people to put in affidavits, declarations, et cetera, of the sort that you put in. They didn't. No jurisdiction. Case gone. Ms. Bose, if you want to bring a case, go bring a case. Why wouldn't that be the right answer if you are correct? Well, that's very close to the right answer. And I did at the fairness hearing say there's an Article III problem. They have not demonstrated that they are class members withstanding to litigate this case. They've pleaded it, but they haven't proved it. My clients both proved that they are members of the class withstanding, and they say it's not good enough for Brooke Bose. You need to require proof from them. I just want to make very clear my understanding here about Brooke Bose. Because we have a lot of issues in this case, and I want to make sure I know what's an issue and what's not. As I understand it, it may have been a horrible injustice to kick Brooke Bose out of the case, or it may not have been, but she has not appealed that. She's not appealed because she's not banned by the judgment below. But it's important to illustrate what was absent from the named plaintiff's proof of their claims and proof of their Article III standing and membership in the class. If she wasn't a member of the class — JUSTICE BREYER. Okay. So let's get back then to what are you arguing, because if you are correct about the failure of the named plaintiffs to document that whatever it is they need to document, that they actually got the text or whatever, they merely alleged it. Why is not the correct answer what Mr. Fader says is the correct answer to the case? We should dismiss this entire matter for lack of demonstrated jurisdiction, vacate the class certification, and if your client, Ms. Kara Bose, wants to bring a case, she's not bound by that either, because that would be a dismissal without prejudice. There would be no more class, no more nothing, no more case. She can go bring whatever lawsuit she wants to bring. MR. CLEMENT. Well, she demonstrated in this case that she is a member of the class withstanding. It would make more sense to hold that the named plaintiffs who refused to show that they were members of the class withstanding cannot continue to represent the class and that she should be able to move to intervene and be the named plaintiff to prosecute the case. JUSTICE BREYER. And when you say they refused, they were deposed, I take it, by the defendant at some point in this litigation. I understand you haven't seen those depositions, right? MR. CLEMENT. That is my understanding, yes.  But they were deposed? MR. CLEMENT. I've been told by class counsel that the named plaintiffs were, in fact, deposed. JUSTICE BREYER. And those depositions are part of the record in this case, albeit sealed? MR. CLEMENT. They are under seal. I don't believe they're part of the record in the case. I don't think they did. I don't think they showed them to the district judge.  to their case that may well indicate that they're not members of the class and don't have standing. JUSTICE BREYER. But those depositions were taken. What would prevent us, why wouldn't we in that event just go back to the—send this case back to the district court on a sort of Jacobson remand and say, make them show you the depositions? And in the depositions, if it turns out that under cross-examination by very competent counsel for the defendants, they testified without any contradiction or any other evidence that ever came into the case that they had received these texts, et cetera, et cetera, wouldn't that put an end to this issue? MR. CLEMENT. It might remedy it after the fact, but it would be rewarding them for playing hide the ball, quite frankly. JUSTICE BREYER. I don't see what ball they're hiding.  CLEMENT. Well— JUSTICE BREYER. If they testified—I mean, this seems to me more in the nature of a kind of oversight. It would have—if they did receive the texts, it would take nothing for them to have put in an affidavit. There's no ball to hide there to show that they are legitimate. If it turns out they aren't, that would be a whole different thing. But I also assume that with competent defense counsel on the case, if they were deposed and the deposition's first question was, and did you ever see this text? And they said, what text? I never heard of it. If my lawyer just filed this lawsuit and told me I would make a lot of money from it, they would have moved to dismiss instantare. MR. CLEMENT. It's going to be more complicated than that because my client, Brooke Bose, who is not before this Court, put in the kind of declaration you're talking about and was ruled not— JUSTICE BREYER. No, your client, Brooke Bose—  CLEMENT. —to be a member of the class. JUSTICE BREYER. With all due respect to her, I'm sure she's a very nice lady. She is irrelevant to this. She did not appeal whatever happened to her. The question is, you are saying that Kara Bose, who is your client, who you are representing here, put in this kind of declaration, gave this testimony, and the plaintiffs did not. But if the named plaintiffs did, you still have other issues to raise about the sufficiency of the settlement, but the standing claim, it seems to me, dissipates. MR. CLEMENT. It's 618,301 in the class, which is not something that the record reflects. JUSTICE BREYER. Thank you, Mr. President. MR.  Thank you very much. MR.  Ms. Terrell. Excuse me, Ms. Terrell. MS. TERRELL. Good morning, Your Honors. Beth Terrell, Terrell Martial Law Group, on behalf of plaintiffs in the class. I'm here with my colleague, Keith Keough. There are two broad issues here on appeal. One is the class settlement, which we haven't talked about. That is subject to the abuse of discretion standard, and unless Your Honors have something specific they want to know about the settlement, I'm prepared to just move on to standing. JUSTICE BREYER. Well, I guess I'd like to know specifically about the question I was raising with Mr. Isaacson, which is, do you have something to fear from a Jacobson remand, where we ask the district court to open up the depositions and look at the list of 600,000 and see whether your folks are on it or not? MS. TERRELL. We do not, Your Honor. However, I don't think that's necessary. I do think that the remedy, if Your Honors are concerned about standing, once we're done with the conversation today, would be to remand, to reopen and look at that evidence, but I don't think we need to reach that, and I think there are a number of cases in this circuit that tell us that. But let's start . . . JUSTICE BREYER. I would add also to Mr. Feder's argument that is, maybe as some technical matter, there should have been some allegation of some sort of actual injury by the plaintiffs that's distinct from just a statutory violation. Maybe we can't just assume that people who are suing because they got unsolicited text messages just didn't really care about that and never even saw the text messages, but if these people actually testified that they did, and that is in the record, so that even at the more muscular standard of review at the class certification or summary judgment stage, these people do have standing, this whole thing goes away. But for the issues that Mr. Isaacson raises with respect to the abuse of discretion or not on the approval of the substance of the settlement, am I right about that? MS. MOSS. That is correct. And as you might imagine, as I was preparing, I wished that we had included in the complaint and in declarations to the class certification motion just exactly those facts. And those facts would show that each one of our plaintiffs are in the data within the class list that has been narrowed down for this case, which is good, and it would secondly show in the deposition transcripts that the plaintiffs complained that they were embarrassed and annoyed about the text, and in particular that they were inconvenienced. The complaint itself contains quite ample allegations, which is why I don't think we have to go to evidence that's not required in this circuit or really anywhere, and we haven't had anyone show us any authority to that effect. But even on the complaint itself, each one of them obviously alleges that they received unsolicited texts, and several of them put in great detail about how they asked to have the text stop, they followed the procedure to opt out, and instead, four, six, eight times later, they still continued to get texts. And so based on the law in this circuit, looking at the allegations of the complaint, even when it's standing, you can construe those in our favor, and those facts alone show a human person would be annoyed, and it would take their time to have to continually ask to have the text stop. That all seems fair enough to me. At the same time, with respect to making a class certification motion, one of the things that needs to be established is that the plaintiffs are adequate representatives of the class, right? That's correct. And that has to be backed by evidence, not merely allegations under current case law, right? That's correct. And would they be adequate representatives of the class if they actually were not properly members of the class because they didn't have standing to raise this? So why wouldn't they still need to document at the class certification stage the kind of things that are said in the allegations of the complaint? Why wouldn't that be part of demonstrating that they are adequate representatives to say all those things that we said in the complaint? I so swear. Your Honor, I think because in this circuit in particular, in Robodeau v. Salani, 987 F. 2nd, 931, standing can be determined based on the allegations in the complaint. And if that's sufficient at a motion to dismiss standard and on a class certification standard, which was Robodeau. In between 98 F. 2nd, did you say? And the present with lots of smart guys like Mr. Fader, persuading the Supreme Court that at the class certification stage, you no longer can rely on allegations in the complaint, but you have to actually show, not for purposes of the merits or purposes of summary judgment, you have to actually have evidence to back up all the elements of class certification. I mean, all those cases that say you can rely on the complaint, is that stuff still operative in today's environment? Not that you can rely on the bare allegations in the complaint, but I don't believe that courts require evidence for every single element that you're establishing for class certification. And importantly, no one came forward with any evidence to show that any of the plaintiffs did not have standing. Quite the contrary. And again, I think the allegations on their own are sufficient to provide standing under Spokio. May I ask you, the settlement class is defined not to include a claim of subjective emotional or other injury. It's defined as the 618,000 and change people who received a text message to their unique device and had not provided appropriate consent. That's correct. Okay, so would that then mean that for the class plaintiffs and the others to opt in, they have to at least be certifying something to that degree as part of the approval process? That's correct, Your Honor. I think there's a couple facts there that are important. Number one, that that class list, that 618,000 people, was reached through a joint expert of the plaintiffs and the defendants because the data was very complicated in this case. And we wanted to make sure that we truly captured people who had claims, people who had received texts and had not consented. That's what that list is. That's why we have some people like Ms. Brooke Bowes who say they got texts, but they're not in the class. But they're allowed to go pursue their claims individually, and in fact, she's done exactly that. So that, you're exactly right, the class is defined to those who received texts. We believe under Spokio, that means every person in the class actually suffered the concrete harm that the TCPA was passed to prevent. Could I go back to that list for a moment? So, once upon a time, quite a while ago, I guess, I had a mobile phone that was capable of receiving texts, but it was back in those days when you got charged for receiving a text and I didn't want to get charged, so I never activated that. Are you telling me, in effect, that someone like that would not be on the list of 600,000 because that's what that list was supposed to look at? In other words, if a blast text message got sent out and it did fall in the forest with no receiving unit to hear it because that phone number had not had text service activated, that person would not be on the list? When we analyze data in these cases, we're able typically to look at disposition codes so that we can tell whether or not they are delivered, and that was certainly the intent in the joint process to look at that data to ensure that the texts were actually received. They're actually received, that's right. I want to go back to... So, all we don't know is whether a person whose phone buzzed and did get that text did or did not actually look at it. That's what we, of course, conceptually can't know, is that it? That's correct. I think there's a safeguard here to some of the concerns that have been raised by Experian, and that includes the claims process that Judge Inglemeyer mentioned. This class actually has already received notice of the settlement. 38,000 and change people have filed timely valid claims, and as part of that claims process, they actually certified that they did, in fact, receive the text. There are a number of different safeguards to ensure that the people who were sent the text, people who made claims and are deemed to be valid, are also assuring that they received the text. And why that's important is it goes to the issue that Experian is sort of noodling around a bit, which is in this circuit, in Denny, although it is clear that only the named plaintiffs must have standing, you need not look to standing for every single class member, it is required that the class be defined in a way that the class members would have standing. And that's again why it's important that the class that we've defined here is only those people who have received text number one and did not consent to them. But that suggests then that there's a need to raise the issue that Mr. Fetter, as amicus if you will, is raising, which is whether or not standing requires receipt plus, i.e. receipt plus some form of emotional harm or some form of distraction harm or invasion of privacy harm. My answer to that would be that Spokio answers that question, and as do all circuits that have addressed that issue, and the Lay's case here, which is that receipt is enough for Article III standing under Spokio. Because in the TCPA, unlike the TILA and unlike the FCRA, which require a risk of harm analysis, here there's a clear nexus in the congressional statute, in the FCC findings, that it's the concrete harm. And that's where the analysis ends. I guess I think maybe you're right about Spokio and the powers of Congress, but I'm still going back to the notion, if somebody slaps me in the face and I bring a battery action and I go to court for trial and I'm asked, did that bother you? I said, no, I've taken worse, I'm a tough guy. Was your dignity affected? I don't know, you want to say that or you don't want to say that? I don't think so. The point is he's not allowed to do that, that's a battery, and I want at least nominal damages that he doesn't get thrown out, that plaintiff wouldn't get thrown out for lack  No, but he might lose all the merits. There would be a battery action because we make that a tort as a matter of common law because we recognize that most people don't like getting slapped in the face and it should be against the law. And common law courts figured that one out. And whether common law courts ever figured out that getting, you know, I guess back in the time of Henry II, they probably didn't have cell phones, I can't remember back that far. But if it was offensive to get phone calls and the common law court said, no, I don't see why Congress couldn't say, yeah, we got our constituents are saying this is a pain in the butt and we don't like it happening. All those guys who sued and lost because there was no such tort, we're now making a tort for them. I just don't see why we can't take cognizance of the fact that people don't like this. It was, people are claiming it's an injury to them just to get these calls. And Congress, besieged by such people, said, yeah, now maybe text is not so. But that's the 12B6 issue, which you and the other side, maybe you would have lost on that as to whether texts are even included because they're not that harmful. But American Eagle decided to pay you to not take the risk of losing and you decided to take maybe a little less money than Mr. Isakson thinks is appropriate because of the concern that you would lose. And that's really all this case is about, I think, question mark. Significantly, Your Honors, this is not really, you don't have to till any new ground here. There have been a number of other circuits that have already reached these issues and found exactly that, that the harm that Congress intended to remedy with TCPA was the receipt of texts and that's sufficient. You need not allege any additional harm. That's Van Patten, that's Cicino. But more importantly, the second circuit in Lays versus Lifetime Entertainment Services, 679 Fed Apps 44, held as follows. In so far as the TCPA protects consumers from certain telephonic contacts, we conclude that Lays' receipt of such an alleged contact in the way described demonstrates more than a bare violation and satisfies the concrete injury requirement for standing. This is the case that the district court found controlled her ruling on the standing issues under Spokio. It's a second circuit case. And if you look at the district court's findings in her final approval order, she actually noted that in Lays, the allegations in that complaint were as bare as they are here. And so really, this court has already decided that under the TCPA, because of that close nexus between the interest and the remedy, the concrete harm truly is the receipt of the text itself. And so you really need go no further, not only for the plaintiffs, and again, the allegations in the complaint are sufficient, but also for all of the members of the class. So even under Denny, we satisfy that requirement because the class definition itself is defined to include only those who received the text, which is the de facto injury under the TCPA. Who received and did not consent. That's correct. Thank you, Ms. Terrell. Thank you. You, responding in the same order, you want to mix it up for a little bit. We don't want to get that crazy, Your Honor. I will try to be briefer than I was on my main argument. The Lays case is actually useful here because what the court actually says there, it expressly says we need not here decide whether the alleged violation of the statute would by itself be sufficient to establish injury in fact, because the evidence shows, and now I'm paraphrasing, that Lifetime left a prerecorded voicemail message to which the plaintiff later listened on the plaintiff's answering machine. And so actually, it's not the same as here because we don't have the equivalent of knowing that the plaintiffs listened to them. It's not, we don't have, this is the same thing like you say, if your phone buzzes, there are a lot of situations where people's phones don't even buzz, right? So that's, now Congress, let's assume for the sake of argument, Congress can say, look, it's offensive enough that we're going to assume that this is an injury across the board. For purposes of hitting federal jurisdiction, I just don't think that it is fair to say that Congress ever made that determination about tax. But that's okay, right? Because that is just a question of the merits as to whether this is covered by the statute. No, I disagree because it is also a question of the merits, sure, but here we're just talking about whether Congress has recognized this harm as a, you know, that we're going to defer to Congress's judgment that this is a concrete Article III harm. And Congress is- You're asking us to do a rather remarkable exercise of judicial activism, right? To take the case or controversy requirement, which basically says, you know, you have to have people who feel they're injured, they're really injured, and now we're going to say Congress can't regulate things that the public wants them to regulate because that would give the courts too much power. And as a result of that, the courts have to strike down legislation effectively. In fairness, Your Honor, I think it's Spokio that says that to a limited extent, that there are some things Congress- but my point here is that it's not just the merits. Congress never made anything approaching a judgment that some tree in a forest message on somebody's- text message on somebody's phone is a harm that they're concerned with at all. The FCC later decided, in the face of statutory silence, that they're going to say, oh, this statute about people's phones wanting to tear them out of the wall and interrupting dinner and all of that, we're going to say it applies to text also. But you can't say Congress made the judgment that just a message showing up on your phone amounts necessarily to an injury. There's just nowhere Congress did that. Why would it matter whether Congress did it? Under your theory, Congress can't make things into harms that aren't harms. The question is, is this something that ordinary people would reasonably recognize as a harm, an annoyance, a problem, and that it's either legal or it's not legal? And there are lots of things that annoy me that I can't sue about, right? The classic sort of thing, in every civil procedure course, we tell first-year students, if somebody walks into the elevator that I know and they don't say hello to me and I feel snubbed, I don't have a cause of action. That's the classic example of a 12b6 kind of claim, right? But if I feel offended and want to litigate the issue of is there such a cause of action, it's a little hard for you to tell me, I think, that I don't have standing to raise that issue in a court. So where I think the key point of disagreement here, Your Honor, is that this is not about saying under the case law, actually, Congress does have a certain amount of power in a gray area to write. The court says, what do we look to? One of the important things we look to is Congress's judgment about certain intangible harms that they have, can exercise judgment to elevate. Why do we even need to go to that gray area? Why doesn't somebody have standing to come to court and say, this is bad stuff and the court should stop it? And then the court isn't entitled to say, no law tells us that we have to stop it. But that doesn't mean you, as the person who was ostensibly aggrieved by this behavior, can't come to court and raise that issue. Right. And I think that the reason here is because we're talking about something that, because you can't come to court just because something is offensive. It has to actually injure you. And there are a lot of people who may actually be injured by it because it's even a minor annoyance. But there are other people for whom it shows up somewhere in their phone. They never see it. And who knows? Do you have any problem with the sort of Jacobson remand to see whether these named plaintiffs actually, you may even know the answer yourself, whether they are said in their depositions that they were. I don't know, Your Honor. I certainly have no problem with it because our position is that that's what standing turns on. Thank you, Mr. Fetter. I might observe you've had an awful lot of time for an amicus. Even the government doesn't get this amount of time. So actually, the thank you is for me to use. Mr. Isaacson. Thank you, Your Honors. Class counsel cites Lace v. Lifetime Entertainment, the federal appendix case, for allegations and the complaint being sufficient. That case actually applies a preponderance to the evidence standard at class certification and summary judgment with respect to proof of the elements of standing. It says the allegations don't matter. This is at class certification and summary judgment. What matters is the evidence that was put in. The evidence is sufficient. Walmart v. Dukes, the Supreme Court says, and I quote, Rule 23 does not set forth a mere pleading standard, end quote. And it goes on to explain that you've got to prove the things that are needed for class certification, but with actual proof, and that includes that they're a member of the class, that they have the same injury, that their claims are typical and they cannot represent the class. Somebody who doesn't have standing can't do any of those things. So necessarily, at class certification and settlement approval, somebody is going to have, the class reps are going to have to show they've got Article III standing with evidence. Do you agree, Mr. Isaacson, that if those people testified to exactly that in their depositions that that would solve that problem? It probably would solve the problem. I'd like to know how that list of 618,301 people was put together. I'm sure we'd all like to know. There was more in colloquy from counsel today than there is in the record below about that list. And then Lujan v. Defenders of Wildlife dealing with the issue of standing, Article III standing in particular, the Supreme Court says that the requirements for standing are not mere pleading requirements. Sure, at the pleading stage, the usual rule applies, but at later stages of litigation, you have to present evidence and proof appropriate at that stage of litigation. So the notion that they can rely on the complaints allegations and that stuff is just wrong. And with respect to Brooke Bowes, who Judge Caproni had said had an ironclad right to file her own action, she filed it in Oklahoma, where she lives. We retained Oklahoma trial counsel. American Eagle filed a motion to stay it and to transfer it to the Southern District of New York, arguing that her claims are subsumed within the issues and claims at issue in this appeal. Judge Caproni, just a couple of weeks ago, stayed the action on the ground that Brooke Bowes' claims may be subsumed by the class claims if this court reverses and remands. Thank you very much. Thank you. Thank you to all three of you. We'll reserve decision.